IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL MATHEW ROMERO,

        Plaintiff,

              v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

                       Civ. No. 21-249 KK

**MEMORANDUM OPINION AND ORDER**[1]

THIS MATTER is before the Court on Plaintiff Paul Mathew Romero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, filed September 20, 2021. (Doc. 18). The Acting Commissioner of the Social Security Administration ("Commissioner") filed a Response, and Mr. Romero filed a Reply. (Docs. 24, 25.) Having meticulously reviewed the entire record and relevant law, and being otherwise fully advised, the Court finds that Mr. Romero's Motion is well-taken and should be GRANTED.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Mr. Romero, age 60, brings this action under 42 U.S.C. § 405(g) seeking reversal of the Commissioner's decision denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (*See* Doc. 1.) Mr. Romero filed a claim for DIB on June 12, 2019, alleging disability beginning on January 13, 2018, due to post-traumatic stress disorder ("PTSD"), depression, nerve damage in his arms, and problems with both shoulders,

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 12.)

both hands, his left ankle, and his left knee. (AR 169–77, 80, 1031.)[2] Prior to his alleged onset

date, Mr. Romero served in the National Guard for 36 years and worked, in a civilian capacity, as

a welder. (AR 40–41.) As a National Guard member, he was deployed in Iraq and Kosovo, and he

asserts that his physical and mental impairments stem from his military service. (AR 50, 559,

1012.) On January 16, 2019, the United States Department of Veterans Affairs assigned Mr.

Romero a disability rating of 70% for service-connected PTSD, 20% for service-connected left

rotator cuff tendonitis, 20% for service-connected right rotator cuff tendonitis, and 10% for

service-connected tinnitus. (AR 209.)

Mr. Romero's claim for DIB was denied initially and upon reconsideration. (AR 109–12,

114–17.) He requested a hearing before an Administrative Law Judge ("ALJ"), which was held on

September 11, 2020. (AR 123–24, 141; *see also* AR 32–71.)

On October 19, 2020, the ALJ issued an unfavorable ruling. (AR 15–26.) Applying the

Commissioner's five-step evaluation process,[3] the ALJ determined at step one that Mr. Romero

has not engaged in substantial gainful activity since his alleged onset date. (AR 18.) At step two,

---

[2] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on July 20, 2021. (Doc. 15.)

[3] The five-step sequential evaluation process requires the ALJ to determine whether:

| | |
|---|---|
| (1) | the claimant engaged in substantial gainful activity during the alleged period of disability; |
| (2) | the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement; |
| (3) | any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P; |
| (4) | the claimant can return to his past relevant work; and, if not, |
| (5) | the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. |

20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

the ALJ found that Mr. Romero suffers from the severe impairments of "degenerative joint disease,

bilateral shoulders; degenerative joint disease, hands; post-traumatic stress disorder," and that Mr.

Romero's "alcohol abuse is a non-severe impairment and is not material to a finding of disability."

(*Id.*) At step three, the ALJ determined that Mr. Romero's impairments do not meet or medically

equal the severity of one of the Listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart

P. (*Id.*)

> At step four,[4] the ALJ found that Mr. Romero
>
> has the residual functional capacity [("RFC")] to perform medium work . . . except the claimant can occasionally reach overhead bilaterally, and frequently reach in all other directions, bilaterally. The claimant can frequently handle and finger bilaterally. The claimant can frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He is able to perform more than simple, but less than complex tasks consistent with semiskilled work. He is able to occasionally interact with supervisors, coworkers, and the general public. He is able to tolerate few changes in a routine work setting. Time off task can be accommodated by normal breaks.

(AR 20.) The ALJ then determined that Mr. Romero could not perform his past relevant work as

an arc welder. (AR 24.)

At step five, the ALJ relied on the Vocational Expert's testimony that an individual with

Mr. Romero's age, education, work experience, and assigned RFC could perform jobs including

linen room attendant, industrial cleaner, dietary aide, and sweeper cleaner operator, and found that

there are jobs that exist in significant numbers in the national economy that Mr. Romero can

perform. (AR 25–26.) The ALJ concluded that Mr. Romero "has not been under a disability, as

---

[4] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. § 404.1520(f).

defined in the Social Security Act, from January 13, 2018, through the date of this decision[.]"
(AR 26.)

Mr. Romero appealed the decision to the Appeals Council. On January 26, 2021, the
Appeals Council denied his request for review, making the ALJ's decision the Commissioner's
final decision from which Mr. Romero now appeals. (AR 1–3.)

## II.  STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether
substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct
legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hamlin v. Barnhart*,
365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must
meticulously examine the entire record but may neither reweigh the evidence nor substitute its
judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other
words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human
Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal
standards and is based on substantial evidence in the record. "Substantial evidence is such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v.
Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citations and quotations omitted). It is "more than
a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "A decision is not based on
substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at
1118 (citations and quotations omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,*
966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must

include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citations, quotations, and alterations omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his [or her] decision, the ALJ also must discuss the uncontroverted evidence he [or she] chooses not to rely upon, as well as significantly probative evidence he [or she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his [or her] specific findings and his [or her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### III. DISCUSSION

Mr. Romero argues that the ALJ failed to: (1) provide a legally adequate reason for rejecting psychological consultive examiner Dr. Robert Krueger's medical opinion that Mr. Romero has a marked limitation in interacting with others; (2) account for Mr. Romero's mental limitations related to his ability to concentrate, persist, and maintain pace; and, (3) adequately account for the mental limitations found by state agency psychological consultants. (Doc. 18 at 11–13, 16–17, 20–23). For the reasons discussed below, the Court finds these arguments well taken.[5]

---

[5] Mr. Romero contends that the ALJ made additional errors warranting reversal. (*See* Doc. 18 at 9–13.) The Court will not address these remaining claims because they may be affected on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). The Court also notes that Mr. Romero has conceded his argument that the ALJ lacked the authority to adjudicate his claim under *Seila Law LLC v. Consumer Financial Protection Bureau*, — U.S. —, 140 S. Ct. 2183 (2020). (*See* Doc. 25 at 1.)

### A. The ALJ improperly rejected Dr. Krueger's opinion as to Mr. Romero's limitations in interacting with others

When the ALJ assigns an RFC that contradicts a medical source opinion, the ALJ must explain why she did not account for the medical opinion in her RFC determination. *Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) (unpublished) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence."). Where the ALJ does not adequately explain her rejection of a medical source opinion concerning the claimant's RFC, the case must be remanded for the ALJ to do so. *Haga v. Astrue*, 482 F.3d 1205, 1208–09 (10th Cir. 2007); *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); *Givens*, 251 F. App'x at 568.

The Commissioner has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017") *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Mr. Romero filed his claims in 2019, the new regulations apply to this matter.

The new regulations provide that the agency "will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record." 20 C.F.R. § 404.1520c(b). Addressing the agency's new "articulation requirements," the regulations state that,

> when a medical source provides multiple medical opinion(s) [sic] . . . we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion . . . from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). The regulations further provide that

> [t]he factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision.[6]

20 C.F.R. § 404.1520c(b)(2).

As the Tenth Circuit recently explained,

> "[s]upportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, — F. App'x —, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (brackets and ellipses omitted).

The agency's new regulations do not, in the Court's view, alter the Tenth Circuit's requirement that an ALJ must explain her rejection of any medical source opinions in the record concerning the claimant's RFC. *Frantz*, 509 F.3d at 1302–03; *Haga*, 482 F.3d at 1208; *Givens*, 251 F. App'x at 568. This requirement flows from the premise that an ALJ's decision must "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [she] rejects," *Clifton*, 79 F.3d at 1010, in order to provide the Court "with a sufficient

---

[6] The new regulations further provide that "[w]e may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions . . . in your case record." 20 C.F.R. § 404.1520c(b)(2). "[T]he factors in paragraphs (c)(3) through (c)(5)" are the source's "[r]elationship with the claimant," the source's "[s]pecialization," and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(3)–(c)(5). If the ALJ finds that two or more differing opinions are equally well-supported and consistent, she must "articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)." 20 C.F.R. § 404.1520c(b)(3).

basis to determine that appropriate legal principles have been followed[.]" *Jensen*, 436 F.3d at 1165 (internal quotations and citations omitted). The requirement enables the courts to engage in meaningful judicial review of agency decisions.

Moreover, "all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted). Thus, the ALJ's reasons for rejecting medical opinions regarding the claimant's work-related abilities must be supported by substantial evidence, and the ALJ must consider all relevant medical evidence in weighing those opinions. *Id.*; *see generally, e.g., Langley*, 373 F.3d at 1116 (reversing ALJ's decision where, *inter alia*, ALJ's reasons for rejecting medical opinions were not or did not appear to be supported by substantial evidence).

Here, Mr. Romero challenges the ALJ's treatment of Dr. Robert Krueger's medical opinions. On August 25, 2020, Dr. Krueger performed a consultative psychological examination to "obtain information about [Mr. Romero's] current cognitive/emotional/behavioral functioning" in order "to assist with the process of disability determination." (AR 1030, 1031.) Relevant here, Dr. Krueger found that "[b]ecause of ongoing issues with anxiety and PTSD, depression, mood swings, and issues with anger management and difficulties in relating with others, Mr. Romero is markedly impaired in many relationships with coworkers, supervisors, and dealing with the general public." (AR 1037.) The ALJ rejected all of Dr. Krueger's medical opinions, finding them "not persuasive." (AR 24.) As to Dr. Krueger's finding of marked impairments in dealing with others, the ALJ explained that "while the claimant reported difficulty interacting with others, he has not required inpatient care, and has not acted inappropriately with medical personnel and staff." (*Id.*)

This explanation for the ALJ's rejection is not legally sufficient. First, the ALJ did not explain why Mr. Romero not needing inpatient care would be relevant to potential limitations in interacting with others. It is not clear why the specific type of treatment he needed would matter, and it seems implausible that inpatient care, in particular, is required to support a marked limitation in interpersonal interactions. Although ALJs need not articulate their analysis perfectly, the analysis still must allow the Court to "follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Here, because the ALJ did not explain the relationship between Mr. Romero's lack of inpatient treatment and the interpersonal limitations to which Dr. Krueger opined, the Court cannot follow the ALJ's reasoning and "determine that correct legal standards have been applied." *Id.*

Second, the ALJ wrongly relied on Mr. Romero not acting inappropriately with medical personnel and staff as grounds to reject this opinion. On this, the Court finds the District of Colorado's reasoning in *Jimenez v. Berryhill* persuasive. 300 F. Supp. 3d 1295 (D. Colo. 2018). In *Jimenez*, an ALJ rejected a medical opinion finding limitations in interacting with others because the claimant was "generally noted to be pleasant and cooperative during his exams, indicating an ability to act in a socially appropriate manner around those with whom he has developed familiarity." *Id.* at 1303–04 (cleaned up). The District of Colorado explained that the ALJ's determination was "mere conjecture" and "'[a]n ALJ cannot substitute her lay opinion for that of a medical professional,' or 'interpose his own 'medical expertise' over that of a physician.'" *Id.* at 1304 (quoting *Lax*, 489 F.3d at 1089; *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987)). The ALJ erred in providing "no medical evidence to support his conclusion that the ability to occasionally interact well with medical providers in exams correlates to an ability to interact appropriately with coworkers and supervisors." *Id.*

Here, the ALJ made the same mistake. The ALJ relies on Mr. Romero's behavior during exams without providing medical evidence, justification, or explanation as to why it correlates to an ability to appropriately interact in a work setting. Furthermore, under the relevant regulations, a "marked limitation" means that a claimant's "functioning in this area independently, appropriately, effectively, and on a *sustained basis* is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(d) (emphasis added); *see also* SSA POMS § 24510.063(B)(3) (a marked limitation is when "the individual cannot usefully perform or sustain the activity"). Mr. Romero's behavior during relatively brief, occasional, and controlled interactions with medical staff does not establish his ability to interact with coworkers, supervisor, and the general public on a sustained basis throughout a normal workday and workweek, and thereby justify the ALJ's rejection of a medical opinion to the contrary.

## B.  Mr. Romero's RFC failed to reflect uncontroverted evidence regarding Mr. Romero's mental impairments

Mr. Romero next contends that, in the assigned RFC, the ALJ failed to account for (1) uncontroverted evidence of his moderate limitations in concentration, persistence, and pace, and (2) moderate mental limitations found by the state agency psychological consultants. (Doc. 18 at 9–13, 21–23.)

### 1.  *The ALJ failed to properly account for Mr. Romero's limitations related to concentration, persistence, and pace*

The record contains uncontroverted evidence of Mr. Romero's mental limitations regarding concentration, persistence, and pace. At the hearing, Mr. Romero testified that his concentration "doesn't last very long, and [he has] a hard time with it," and the function reports state that his conditions affect his concentration, memory, and ability to complete tasks. (AR 58, 244, 252, 269.) The state agency psychological consultants found that Mr. Romero is moderately

limited in the abilities to concentrate, sustain a routine without special supervision, work in proximity with others without being distracted, and complete a normal workday and workweek without interruptions. (AR 87, 105.) The ALJ found the consultants' opinions "persuasive." (AR 23.) Consultive examiner Dr. Earl opined that Mr. Romero

> is likely to experience impairment in the ability to understand and carry out simple and complex instructions, as well as concentrate, related to his current symptoms. Additionally, the claimant is likely to have difficulty persisting at tasks and being a dependable employee given the degree of concentration difficulty and anxiety.

(AR 563.) The ALJ found Dr. Earl's opinions "somewhat persuasive" in general and his specific opinion that Mr. Romero has moderate concentration, persistence, and pace limitations "consistent with the evidence." (AR 23–24.) Furthermore, at step three of Mr. Romero's disability determination, the ALJ found that "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation."[7] (AR 19.)

The Tenth Circuit has explained that "a moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. And an ALJ is required to explain her rejection of any medical source opinions in the record concerning the claimant's RFC. *Frantz*, 509 F.3d at 1302–03. Thus, because the record contains uncontroverted opinions evidencing Mr. Romero's concentration, persistence, and pace limitations—opinions that the ALJ accepted—the ALJ was

---

[7] The Tenth Circuit has found that an ALJ is not necessarily required to include all limitations found at step three in a claimant's RFC. *See Bales v. Colvin*, 576 F. App'x 792, 797–98 (10th Cir. 2014); *Beasley v. Colvin*, 520 F. App'x 748, 754 n.3 (10th Cir. 2013). However, as the District of Colorado has noted, the cases in which the Tenth Circuit found that step three limitations were not required to be addressed in step four rested "on the existence of additional analysis narrowing or qualifying the moderate functional limitations identified at step three such that there was no inconsistency between the step three findings and the RFC ultimately assessed." *Valdez v. Saul*, No. 17-cv-2610, 2020 WL 2832372, at *5 (D. Colo. June 1, 2020); *see also Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (finding that "relatively broad, unspecified" language in the RFC was insufficient to account for "more specific findings" of mental limitations found at step three). Here, because uncontroverted medical evidence supports the moderate limitations at issue, the Court need not determine what requirements stem from the ALJ's step three findings of such limitations.

required to either account for these limitations in Mr. Romero's RFC, or adequately explain why

she did not include them.

> In the RFC, the ALJ included the following mental limitations:

> He is able to perform more than simple, but less than complex tasks consistent with
> semiskilled work. He is able to occasionally interact with supervisors, coworkers,
> and the general public. He is able to tolerate few changes in a routine work setting.
> Time off task can be accommodated by normal breaks.

(AR 20.) This mental RFC fails to account for Mr. Romero's moderate limitations in concentration,

persistence, and pace. Although the ALJ determined that time off task can be accommodated by

normal breaks, this is not a limitation, because "it contemplates no interference whatsoever with

the Plaintiff's ability to hold a full-time job." *Wallace v. Berryhill*, No. 17-cv-406, 2018 WL

4178693, at *4 (N.D. Ind. Aug. 31, 2018). Because the ALJ did not account for Mr. Romero's

moderate limitations as to concentration, pace, and persistence, she was required to explain the

omission. *See Clifton*, 79 F.3d at 1010 (10th Cir. 1996) ("[T]he ALJ also must discuss the

uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence

he rejects."). But her decision includes no such explanation.

The Commissioner argues that the ALJ did include these moderate mental limitations in

Mr. Romero's RFC by finding that he "is able to perform more than simple, but less than complex

tasks consistent with semiskilled work." (AR 20; Doc. 24 at 23.) The Court recognizes that the

Tenth Circuit has found that "an administrative law judge can account for moderate limitations by

limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269

(10th Cir. 2016); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). However, this

general rule does not redeem the ALJ's RFC determination here.

First, this rule has only been found to apply where a claimant is limited to unskilled work;

and, the Tenth Circuit's holdings rest on the specific requirements of unskilled work. *See Vigil v.*

*Colvin*, 805 F.3d at 1204. But here, the ALJ limited Mr. Romero to semiskilled work, about which

the Social Security Program Operations Manual System[8] ("POMS") states, "[o]ften, there is an

increasing requirement for understanding and memory and for concentration and persistence."

SSA POMS § 25020.010(B)(4). According to the POMS, to perform semiskilled work, an

individual must be able to "understand and remember detailed instructions, carry out detailed

instructions, and set realistic goals or make plans independently of others." *Id.* Thus, unlike

unskilled work, the requirements for semiskilled work do not account for Mr. Romero's moderate

limitations in concentration, persistence, and pace.

      Second, the Tenth Circuit has warned that a limitation to particular kinds of work do not

necessarily address a claimant's mental limitations. *See Vigil*, 805 F.3d at 1204 ("There may be

cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's

mental limitations."); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("A

limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's

mental impairments."). Rather, "[u]nless the connection (between the limitation and the work) is

obvious, . . . the agency must ordinarily explain how a work-related limitation accounts for mental

limitations reflected in a medical opinion." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th

Cir. 2019).

      In this case, the connection between the limitation and the work is not obvious. The RFC's

limitation to "more than simple, but less than complex tasks," (AR 20), only addresses the relative

---

[8] The Tenth Circuit has explained that "[t]he POMS is a set of policies issued by the Social Security Administration to be used in processing claims. This court defers to the POMS provisions unless we determine they are arbitrary, capricious, or contrary to law." *Anders v. Berryhill*, 688 F. App'x 514, 521 (10th Cir. 2017) (cleaned up).

difficulty of tasks, and not whether work can be sustained. Thus, even if this provision was sufficient to account for Mr. Romero's limitations as to concentration, it would still not appear to address his moderate limitations in sustaining that concentration, working without special supervision, or completing a normal workday or workweek without interruption. (AR 87.) Nevertheless, the ALJ did not explain how limiting Mr. Romero to semiskilled work would account for his moderate limitations supported by uncontroverted evidence.

### 2.   The ALJ failed to account for limitations found by state agency psychologists

As part of Mr. Romero's Disability Determination Explanation ("DDE") at both the initial and reconsideration levels, non-examining state agency psychologists Dr. Scott Walker (initial) and Dr. Mark McGaughey (reconsideration) completed Mental Residual Functional Capacity Assessment ("MRFCA") forms. (AR 86–88, 104–06.) Because Dr. McGaughey affirmed Dr. Walker's findings on reconsideration, their medical opinions are the same. (*Id.*)

The MRFCA form is divided into four sections for different categories of mental function: Understanding and Memory Limitations, Sustained Concentration and Persistence Limitations, Social Interaction Limitations, and Adaptation Limitations. These four sections each contain two subparts: a worksheet portion where the consultant records the degree of limitation in specified areas, and a narrative portion where the consultant records "the actual mental residual functional capacity assessment" and "describes how the evidence supports each conclusion." (AR 86.) And then, at the end of the form, there is a section titled "MRFC - Additional Explanation," where the consultant may record "[a]ny other assessment information deemed appropriate." [9] (AR 86–88.)

---

[9] The complete instructions on the MRFCA form are as follows:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding

At issue here are the agency consultants' findings in the Sustained Concentration and

Persistence Limitations section. The agency consultants recorded the following:

**The ability to carry out very short and simple instructions.**
   No evidence of limitation in this category

**The ability to carry out detailed instructions.**
   Moderately limited

**The ability to maintain attention and concentration for extended periods.**
   Moderately limited

**The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.**
   Moderately limited

**The ability to sustain an ordinary routine without special supervision.**
   Moderately limited

**The ability to work in coordination with or in proximity to others without being distracted by them.**
   Moderately limited

**The ability to make simple work-related decisions.**
   No evidence of limitation in this category

**The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods**.
   Moderately limited

**Explain in narrative form the sustained concentration and persistence capacities and/or limitations:**
   Self reported deficits.

(AR 87, 105.)

---

and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

(AR 86.)

The Court notes that agency consultants failed to follow the MRFCA instructions and failed to record Mr. Romero's "actual mental residual functional capacity assessment" in the narrative portion.[10] (AR 86.) However, in the "MRFC - Additional Explanation" section, the consultants stated that "[t]he claimant can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, make decisions that require quick response. The claimant can interact superficially with co-workers and supervisors and respond appropriately to changes in a work setting." (AR 88, 106.)

The ALJ accepted the medical opinions of the agency consultants on all aspects of Mr. Romero's mental functioning except his ability to interact with others. The ALJ explained:

> The State agency psychological consultants' opinions concerning the claimant's mental functioning is persuasive as they are generally consistent with the evidence . . . Accordingly, the evidence supports a finding that the claimant can perform less than complex tasks, and have some limited interaction with others. Accordingly, this opinion is generally supported and consistent with the evidence. However, the undersigned limited the claimant to occasional interaction with others.

(AR 23.) Thus, *inter alia*, the ALJ accepted the consultants' opinions regarding concentration, persistence, and pace. But, as discussed above, Mr. Romero's RFC did not reflect all of Mr. Romero's Sustained Concentration and Persistence Limitations. The Court recognizes that the ALJ is not required to include in Mr. Romero's RFC every finding of the agency consultants, but because the ALJ determined that their opinions were consistent with the record evidence, she was required to explain why she did not include them. *See Clifton*, 79 F.3d at 1009–10. The ALJ did not provide such an explanation.

---

[10] The Court further notes that the consultants failed to record Mr. Romero's mental RFC in the other sections as well. (*See* AR 87, 88, 105, 106.)

The Commissioner argues that under *Fannin v. Comm'r, SSA*, 857 F. App'x 445 (10th

Cir. 2021), the ALJ was not required to discuss the limitations that the consultants recorded in the

worksheet portion of the MRFCA form.[11] (Doc. 24 at 18.) *Fannin* holds that when asking

hypothetical questions to a vocational expert, it is not an error for the ALJ to relay the narrative

mental RFC found by the agency consultant, so long as that narrative mental RFC is consistent

with the limitations found on the worksheet portion. *Fannin*, 857 F. App'x at 447–48; *see also*

*Smith*, 821 F.3d at 1269 (finding that the ALJ incorporated worksheet limitations "by stating how

the claimant was limited in the ability to perform work-related activities."). And the Tenth Circuit

has made clear that an ALJ should not "turn a blind eye to any moderate limitations enumerated

in [the worksheet section] that are not adequately explained." *Lee v. Colvin*, 631 F. App'x 538,

541 (10th Cir. 2015); *see also Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (explaining

that the POMS requires consultants to incorporate in the narrative portion all limitations found in

---

[11] In *Fannin*, and related cases, the Tenth Circuit relies on the instructions contained in the POMS for the SSA-4734-F4-SUP mental RFC assessment form, which is divided into three sections. *See Fannin*, 857 F. App'x at 446, 447; *Lee v. Colvin*, 631 F. App'x 538, 540–41 (10th Cir. 2015); *see also* SSA POMS § 25020.010(B)(1). However, the SSA-4734-F4-SUP form is no longer in use. Instead, agency consultants now use the electronic Claims Analysis Tool ("eCAT"), and their assessments are included as the MRFCA portion of the DDE.

Although the MRFCA portion of the DDE is not divided into three sections like the SSA-4734-F4-SUP form, courts have found that Section I of the SSA-4734-F4-SUP form is analogous to the worksheet portions discussed above, and Section III in analogous to the narrative portions. *See, e.g.*, *Vienna v. Saul*, No. 18-cv-783, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019) ("Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.'"); *but cf. Cordova v. Berryhill*, No. 17-cv-0611, 2018 WL 2138647, at *6 (D.N.M. May 9, 2018) (finding that the "Court cannot agree with Defendant that in this case, the ALJ was permitted to ignore the 'Section I' findings when there is no 'Section I' in [the MRFCA form on the record]").

However, whereas the SSA-4734-F4-SUP form "instructs completing psychologists to offer their narrative conclusions separately in Section III, which is labeled 'Functional Capacity Assessment,'" the forms here "instruct[] completing psychologists to input narrative conclusions after each category of mental function." *Kim L.P. v. Saul*, No. 18-cv-552, 2020 WL 5802927, at *3 (N.D. Okla. Sept. 29, 2020). Thus, in the MRFCA portion of the DDE, the Section III narrative is divided across the four sections, so the consultant may specify a mental RFC for each category of mental function.

the worksheet portion). Thus, an ALJ may only disregard limitations found in the worksheet portion when the narrative portion "adequately encapsulate[s]" them. *Carver*, 600 F. App'x at 619.

As discussed above, the agency consultants did not properly record Mr. Romero's mental RFC in the narrative portions of the MRCFA form as required. (*See* AR 87, 105 (boldface omitted) ("Explain in narrative form the sustained concentration and persistence capacities and/or limitations: Self reported deficits").) Thus, the moderate limitations recorded in the worksheet portion were not adequately incorporated into a narrative mental RFC. Moreover, even if the "additional explanation" portion of the MRCFA contained the agency consultants' narrative findings, the ALJ would still not be able to ignore the worksheet section limitations because the additional explanation portion does not adequately encapsulate them. Although the consultants opined that Mr. Romero can "carry out detailed but not complex instructions" and "attend and concentrate for two hours at a time," (AR 88, 106), their additional explanation does not account for their findings that Mr. Romero is moderately limited in his abilities to sustain an ordinary routine without special supervision and complete a normal workday or workweek without interruptions from psychologically based symptoms or perform at a consistent pace. (AR 87, 105).

## IV. CONCLUSION

For the reasons stated above, the Court determines that the ALJ failed to: (1) provide a legally adequate explanation for rejecting Dr. Krueger's medical opinion that Mr. Romero has a marked limitation in interacting with others; (2) account for Mr. Romero's moderate limitations in concentrating, persisting, and maintaining pace in his assigned RFC or otherwise explain why he is not so limited; and, (3) properly account for the moderate limitations to which the state agency psychologists opined. Because of these errors, the Court cannot conclude that the ALJ's decision is supported by substantial evidence or that the ALJ applied the correct legal standards. Mr.

Romero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 18) is GRANTED, and this matter is remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

　　　IT IS SO ORDERED.


_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE